STATE ᴇx ʀᴇʟ. JOHNSON, ᴀᴘᴘᴇʟʟᴀɴᴛ, *v.* KASSING, Rᴇsᴘᴏɴᴅᴇɴᴛ.

(No. 5,728.)

(Submitted June 19, 1925. Decided June 29, 1925.)

[238 Pac. 582.]

*Mandamus—Schools and School Districts—School Census—State Vocational School—Inmates not Resident Within District Where Institution Located.*

School Districts—Disputes Appealable to School Authorities—When Rule Inapplicable.
1.   The rule that courts will not entertain disputes in school matters unless the remedy by appeal to superintending school authorities has been exhausted has no application to proceeding to compel a state officer (superintendent of the State Vocational School) to furnish the clerk of the school district in which the state school is located a list of its inmates, for school census purposes, in the absence of a provision of law whereby defendant could be brought before school authorities for determination of the question involved.

Same—"Exact" School Census—Definition.
2.   The "exact census" of all school children of school age within a given school district which the clerk thereof is required by section 1051, Revised Codes of 1921, to make contemplates a precisely accurate one, to-wit, one in which only children resident in the district may be included.

Same—Inmates of State Vocational School not Subject to Enumeration in School Census of District in Which School Situated.
3.   *Held,* that since the residence of a minor of school age committed to the State Vocational School is where the father or mother resides (Rev. Codes, sec. 33, subd. 4), inmates thereof sent thereto from the various counties of the state are not resident in the school district in which that institution is located, within the meaning of section 1051, Revised Codes, and that therefore *mandamus* does not lie to compel its superintendent to furnish a list of them to the clerk of that district for school census purposes.

Schools and School Districts, 35 **Cyc.**, p. 819, n. 73; p. 857, n. 32.

*Appeal from District Court, Lewis and Clark County; A. J. Horsky, Judge.*

MANDAMUS by the State, on the relation of Hilda Johnson against Edith A. Kassing. From a judgment dismissing the petition, plaintiff appeals. Affirmed.

*Mr. Lester H. Loble* and *Mr. Hugh Adair,* for Appellant, submitted an original and a reply brief; *Mr. Adair* argued the cause orally.

Citing: *Child Welfare Soc.* v. *Kenney School Dist.,* 220 Mich. 290, 189 N. W. 1002; *Logsdon* v. *Jones,* 311 Ill. 425, 143 N. E. 56; *Ashley* v. *Board of Education,* 275 Ill. 274, 114 N. E. 20; *Mt. Hope School Dist.* v. *Hendrickson,* 197 Iowa, 191, 197 N. W. 47; *People ex rel. Brooklyn Children's Aid Society* v. *Hendrickson,* 54 Misc. Rep. 337, 104 N. Y. Supp. 122; 125 App. Div. 256, 109 N. Y. Supp. 403; affirmed, 196 N. Y. 551, 90 N. E. 1163; *Grand Lodge I. O. O. F.* v. *Board of Education* (1922), 90 W. Va. 8, 110 S. E. 440; *Morrison* v. *Smith-Pocahontas Coal Co.,* 88 W. Va. 158, 106 S. E. 448; *Piper* v. *Big Pine School Dist.,* 193 Cal. 664, 226 Pac. 926.

*Mr. L. A. Foot,* Attorney General, and *Mr. A. H. Angstman,* Assistant Attorney General, submitted a brief; *Mr. Angstman* argued the cause orally.

Citing: *Commonwealth* v. *Board of Directors, etc.,* 164 Pa. 603, 26 L. R. A. 581, 30 Atl. 507; *Commonwealth* v. *Directors of School District, etc.,* 164 Pa. 607, 26 L. R. A. 584, 30 Atl. 509; *Lake Farm* v. *District Board,* 179 Mich. 171, L. R. A. (n. s.) 234, 146 N. W. 115; *Black* v. *Graham,* 238 Pa. 381, 86 Atl. 266; *State ex rel. German Protestant Orphan Asylum* v. *Directors of School District No. 14,* 10 Ohio St. 448.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

On October 15, 1924, plaintiff filed in the district court of the first judicial district her verified petition for a writ of mandate to compel defendant, as superintendent of the State Vocational School for Girls, to give the necessary information to enable plaintiff, as clerk of school district

No. 6, to enumerate the inmates of said school in the census of said district. Defendant moved to quash, on the ground that the petition does not state facts sufficient to entitle plaintiff to the relief sought, which motion, after argument, was sustained by the court, and thereupon judgment of dismissal was entered. From this judgment plaintiff has appealed.

The petition alleges that school district No. 6 of Lewis and Clark county is duly organized, and plaintiff is its duly appointed, qualified and acting clerk; that the State Vocational School is located within said district, and defendant is its duly appointed, qualified and acting superintendent. It then recites that at the time mentioned there were approximately seventy-five girls residing in said vocational school and of school age, who had been regularly committed thereto from the several counties of the state and are now residing within the district and under the guardianship, custody and control of defendant; that from time to time inmates of said school have received benefits from the district, such as transportation to the Helena high school and the purchase of textbooks, furnished by said district, and since the year 1921 the district has expended approximately $600 for the use and benefit of the inmates of said school; that plaintiff demanded of defendant information necessary to the enumeration of said children, which was refused; that said school is a semi-penal institution; and that plaintiff has no way of gaining access to or obtaining the necessary information. All of these facts are deemed admitted.

1. It is contended that the trial court was without jurisdiction to determine the controlling question, i. e., the question of residence, under the ruling in the recent case of *Peterson v. School Dist. No. 1, Cascade County*, 73 Mont. 442, 236 Pac. 670.

In the *Peterson Case* we declared that the court was without jurisdiction, for the reason that Peterson had not exhausted the remedy by appeal from the action of the board

of trustees, provided for in section 966, Revised Codes of 1921. That ruling has no application here, as this action was commenced by a school officer (*O'Brien* v. *School District*, 68 Mont. 432, 219 Pac. 1113) against a state appointee, and there is no provision of law by which such a one could be brought before any school official for a determination of the question here involved.

There is no plain, speedy and adequate remedy provided by law, and the plaintiff was entitled to the peremptory writ sought, if in fact she was entitled to have the defendant perform a clear legal duty. (*State ex rel. Bean* v. *Lyons*, 37 Mont. 354, 96 Pac. 922; *State ex rel. Stuewe* v. *Hindson*, 44 Mont. 429, 120 Pac. 485; *State ex rel. Furnish* v. *Mullendore*, 53 Mont. 109, 161 Pac. 949.)

It is therefore apparent that the trial court was acting within its jurisdiction, and that, in order to determine whether the petition stated facts sufficient to entitle plaintiff to the relief sought, it was necessary for that court to pass upon the foregoing question.

2. Section 1051, Revised Codes of 1921, requires the clerk [2, 3] of each school district to make, annually, an exact census of all children of school age residing within the district. Counsel for plaintiff contend that the use of the words "exact census" entitles the clerk to demand and receive the information asked as to all children of school age within the district that she may include them within the census and submit such "exact census" to the proper school officials for their determination as to whether all those enumerated are "residing within the district" within the meaning of the statute. Those words, however, have been construed, adversely to the assertion now made by this court, in the case of *School Dist. No. 7.* v. *Patterson*, 10 Mont. 17, 24 Pac. 698, where it is declared: "The 'exact census,' which the clerk * * * is required to take, must be 'precisely accurate,' and cannot include any person whose legal residence is elsewhere."

The clerk is therefore required, by the provisions of section 1051, to determine the question of residence for school purposes of each child enumerated, and to include in the census only those whom she is legally entitled to include, and, if none of the children committed to the vocational school can legally be included in the census, plaintiff's petition does not state facts sufficient to entitle her to the relief sought.

3. Our Codes provide, quite specifically, the manner in which residence shall be determined. Section 33, Revised Codes of 1921, declares:

"Every person has, in law, a residence. In determining the place of residence the following rules are to be observed:

"1. It is the place where one remains when not called elsewhere for labor or other special or temporary purpose, and to which he returns in season of repose.

"2. There can only be one residence.

"3. A residence cannot be lost until another is gained.

"4. The residence of the father during his life, and after his death the residence of the mother, while she remains unmarried, is the residence of the unmarried minor children.

"5. The residence of the husband is presumptively the residence of the wife.

"6. The residence of an unmarried minor who has a parent living cannot be changed by either his own act or that of his guardian.

"7. The residence can be changed only by the union of act and intent."

Conceding that there may be fact conditions which might constitute a "residence" for school purposes apart from the legal domicile of the parents, as, for instance, where the parents have given a child over to another for its rearing and education, there is nothing in this record to indicate any "intent" on the part of the parents of these girls to change their places of residence; nothing in the acts of the

children themselves, under the statute, can effect such a
change; and, even if we admit that by its action the state
has become the guardian of these children, as asserted by
counsel, under subdivision 6 of the statute quoted, the resi-
dence of minor children who have parents living cannot be
changed by the act of such guardian.

If these rules for determining residence are not sufficiently
definite to fix the residence of these girls outside the dis-
trict, we have also subdivision 2 of section 574, Revised Codes
of 1921, which reads: "A person must not be held to have
gained or lost a residence by reason of his presence or ab-
sence while employed in the service of the United States, or
of this state, nor while a student at any institution of
learning, nor while kept at any almshouse or other asylum
at the public expense, nor while confined in any public prison,"
*etc.* This section is an exact copy of section 3, Article IX,
of our Constitution.

The petition recites that this school is a "semi-penal" in-
stitution, which is true, inasmuch as girls are there com-
mitted, instead of commitment to prison, on conviction of
both felonies and misdemeanors. It is also an institution of
learning, for sections 12520 and 12533, Revised Codes of
1921, amply provide for the education of its inmates. There-
fore these girls cannot be held to have acquired a residence
in school district No. 6 of Lewis and Clark county, nor
lost their residence in the counties in which their parents
reside, by reason of commitment to this school.

The Act creating and providing for the vocational school
recognizes the fact that there is no change made, or at-
tempted to be made, by the involuntary transfer of a girl
to Lewis and Clark county, for in section 12537 it declares
that "the expense of committing such a girl to the State
Vocational School for Girls, of the returning of her to her
parent or guardian after her release therefrom, shall be at
the expense of the county from which the girl is com-
mitted; and provided, further, that the county from which

any girl committed to the State Vocational School for Girls shall be sent shall be liable for the expense attending the care, education, training, and safekeeping of such girl until she shall have been fully discharged," *etc.* The principal is required to make and transmit, monthly, to the board of county commissioners in each of such counties, a detailed report of those girls committed from their county, and the several boards are required to pay at the rate of thirty-five cents per day for each of such girls until their final discharge.

4. Counsel for plaintiff call attention to the recitation in the petition that, in times past the inmates of this school have received some benefits from the school district, particularly that some of the girls have been transported, at the expense of the district, to the Helena high school, and contend that the district, having been subjected to the detriment, should be entitled to the benefit of their residence within the district.

It is not disclosed how this condition was brought about. If, under the laws of the state, the education of the inmates of this institution were not provided for, and they were permitted by law to attend school outside the confines of the institution, an entirely different case might be presented. But these girls have been committed to a state institution. While the commitment, in certain instances, may have been only because "for want of proper parental care" the girl was found to be "growing up as a mendicant, vagrant or delinquent," commitment may also be made on conviction of any crime short of murder or manslaughter (sec. 12535, Rev. Codes 1921), and the presiding officer of this institution is required to "keep" all girls committed, in the institution, "until they have reached the age of twenty-one years," or "until they are discharged by law, or paroled under the rules of said school." (Sec. 12521.) Their proper education is provided for within the "school." (Sec. 12520.) This is a "school" provided by law for their education;

it is so designated in the statute; and it is not contemplated that any of the inmates, as such, shall attend school elsewhere. It may be that, in years past, the presiding officers of the school have violated the law by permitting some of the girls to attend school elsewhere, but such a violation of the law is no justification for a further violation, by consenting to their enrolment in, or enumeration in the census of, school district No. 6. It may be that "under the rules of the said school" certain of the inmates may have been paroled for the purpose of attending the Helena high school; but there is nothing in the petition to indicate that such was the case; however, whether such a rule would be valid under the provisions of section 12534, and whether a child paroled, but still living within the district, would be a proper subject for enumeration in the census of the district, are questions which we are not here called upon to determine.

These girls have been duly committed to the vocational school on charges made against them and found to be sustained by the evidence, whether it be merely for delinquency or for the commission of crimes which, were it not for their tender years, would have resulted in commitment to the state penitentiary. The purpose of the state is to redeem, reform and educate, rather than to punish, them, and for the successful carrying out of that purpose as little publicity as possible should attend their stay at the school. To now say that those in charge of these girls should be compelled to give the names, ages and homes of these girls themselves, and the full Christian and surnames of their fathers and mothers, with their places of residence, that such information might be incorporated in a public record which all may see and examine, merely in order that school authorities may determine whether such girls are properly subject to enumeration, would tend to retard, if not to destroy, the purpose of the establishment of the school, and would bring additional and unnecessary sorrow and humiliation, not

only to the girls themselves, but to their parents, many of whom may have been in nowise blameworthy for the misdeeds of their children.

Counsel assert that these girls have a fixed and permanent residence within the school district during the full term of their child life, for their commitment is until they shall reach the age of twenty-one years; but this is only qualifiedly so, since the humane provisions of the Act creating the vocational school contemplate parole at any time, on good behavior and full discharge under certain conditions. When paroled or discharged, they should be permitted to take up the ordinary course of their lives where it was broken off by their commitment, without a greater stigma attaching to their detention than is absolutely necessary.

As the petition merely shows that a certain number of girls committed from various counties of the state, where, presumably, their parents reside, are now in the custody of the state and in charge of the defendant, it does not state facts sufficient to entitle plaintiff to the relief sought.

The judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES HOLLOWAY, GALEN and MATTHEWS concur.

MR. CHIEF JUSTICE CALLAWAY, being absent on account of illness, did not hear the argument and takes no part in the foregoing decision.